IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CR-398-FL-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JOSE DAVID LOVO-SERRANO, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court for hearing on defendant's motion to withdraw guilty plea (DE 61) and for sentencing. The court memorializes herein the court's reasons for denying defendant's motion and for overruling defendant's objections turning on defendant's status as a prohibited person.[1]

## BACKGROUND

This case commenced October 21, 2021, with a criminal complaint charging defendant with being an illegal and unlawful alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(A) and § 924. His first appointed counsel, Deidre A. Murray ("Murray"), entered an appearance October 27, 2021. Indictment then was filed November 2, 2021, charging defendant with being an illegal and unlawful alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(A) and § 924 (count one) and possession of a firearm from which the manufacturer's

---

[1] The court also overruled an additional objection raised by defendant, concerning statements attributed to him at paragraph seven of the presentence report (PSR), as well as several additional pro se objections raised by defendant at sentencing hearing, with the reasons for overruling those objections provided on the record at sentencing hearing.

serial number had been removed, altered, and obliterated, in violation of 18 U.S.C. § 922(k) and 924 (count two).

Defendant was ordered detained at detention hearing held November 16, 2021. Arraignment was first set January 5, 2022, then continued on defendant's motion until March 14, 2022. At first arraignment held March 14, 2022, defendant appeared with counsel, who requested further continuance, and defendant made an oral pro se request for new counsel. The court denied the motion for new counsel but allowed the continuance and set arraignment for the May 2022 term.

On April 25, 2022, defendant's first appointed counsel, Murray, moved to withdraw, and the court allowed that motion at hearing held May 12, 2022, continuing arraignment to the August 2022 term of court. Defendant's second appointed and present counsel, R. Andrew McCoppin ("counsel" or "McCoppin") entered an appearance that same date.

Defendant executed a plea agreement, on June 13, 2022, under which defendant agreed to plead guilty to count two of the indictment, and the government agreed to dismiss count one of the indictment at sentencing.

Defendant filed pro se, on June 28, 2022, a sealed document (DE 40), which includes his own detailed discussion of the charge of possession of a firearm by an illegal and unlawful alien, including reference to defendant's immigration applications and status on the date of the instant offense, January 17, 2021, as well as case law.

Defendant then proceeded to arraignment on August 2, 2022, at which he appeared with counsel and a Spanish interpreter, and pleaded guilty to count two of the indictment. The government moved to dismiss count one at sentencing, and the case first was set for sentencing to take place November 15, 2022.

Six days after arraignment, on August 8, 2022, defendant moved to expedite his sentencing, citing his time in custody and the low anticipated sentencing range. The court denied that motion by margin order on that same date. Two days later, defendant filed a pro se letter, stating as follows:

> I would like to request a new court [date], because on 08/02/2022, I misunderstood the court appointed interpreter, because she ran out of battery in her microphone communication device, and she continue without the device. When asked for the court to consider[] my release, before accept my plea. I really want the court considered my release today.

(DE 48). Defendant filed an additional pro se letter, on September 8, 2022, on similar grounds, referencing the interpreter's microphone, asking for his counsel "to put in the motion to withdraw[] my guilty plea." (DE 49). The next day, defendant filed an additional pro se letter, regarding "count two of the charges," quoting statutory provisions and caselaw interpreting the Second Amendment, and asserting that the shotgun underlying the instant offense was "for sporting purposes." (DE 50-1 at 3). That same day, the court admonished defendant in a text order that "[d]efendant shall act only through his appointed counsel going forward and not persist in writing to the court directly." (9/9/22 Text Order).

Defendant filed the instant motion to withdraw guilty plea, through counsel, on December 12, 2022.[2] The government responded in opposition on January 26, 2023, relying upon the transcript and an unpublished court order. Defendant filed a sentencing memorandum on February 8, 2023, relying upon an analysis of defendant's immigration status prepared by immigration attorney John F. Hester. At sentencing hearing, the court heard additional argument by the parties, and, on defendant's request, the court provided an opportunity for defendant to have the interpreter translate and read to defendant in Spanish his PSR in its entirety.

---

[2] The initial motion and corrected motion (DE 56 and 57) were not readable through the court's CM/ECF system, and the clerk refiled the motion December 13, 2022, at DE 61 (entered January 5, 2023).

# COURT'S DICUSSION

A.   Motion to Withdraw Guilty Plea

   1.   Standard

Federal Rule of Criminal Procedure 11 authorizes withdrawal of a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[A] defendant does not have an absolute right to withdraw a guilty plea, even before sentencing." United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). The court may allow a motion to withdraw if defendant carries the "burden of demonstrating to the district court's' satisfaction that a 'fair and just reason' supports his request to withdraw." Id. Factors to consider in making this determination include:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

United States v. Nicholson, 676 F.3d 376, 384 (4th Cir. 2012).

"The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." Id. "Thus, when a district court considers the plea withdrawal motion, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." Id. "A voluntary and intelligent plea of guilty is an admission of all the elements of a formal criminal charge and constitutes an admission of all material facts alleged in the charge." Id. "Accordingly, a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." Id. "Indeed, it raises a strong presumption that the plea is final and binding." Id.; see United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992).

"The consideration of these factors is not a rigidly mechanistic test, for the conspicuous fuzziness of the operative terms–fair and just–precludes such an endeavor. United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009). Nevertheless, the court must "balance these factors, along with any other pertinent information, to reach its decision." Id.

2. Application

    a. Counseled and Voluntary Plea

The first and most important factor in this case weighs against withdrawal because defendant's plea was both counseled and voluntary, as demonstrated by the record of the Rule 11 hearing. (See Transcript of Arraignment ("Tr.") (DE 60)). The court's Rule 11 colloquy included all the required elements to ensure the plea was counseled and voluntary, including confirmation that:

1) Defendant was provided a copy of the indictment with two charges against him.

2) Defendant fully discussed those charges and the case in general with counsel, with the benefit of an interpreter.

3) Counsel, McCoppin, confirmed he had no difficulty in communicating with defendant, "with the assistance of an interpreter." (Tr. 13).

4) The court found defendant competent to appear.

5) Defendant was satisfied with the advice of his counsel.

6) Defendant understood the general explanation of rights and sentencing process.

7) Defendant was not seeking any particular relief with his pro filing.

8) The court read the charges of the indictment to defendant.

9) Defendant understood the two charges and the maximum punishments for each of the charges, including up to ten years on count one.

5

10) Defendant read and discussed the plea agreement with his counsel before he signed it.

11) Defendant understood the waivers in the plea agreement.

12) Defendant was not threatened or coerced into pleading guilty, or promised anything other than the plea agreement in exchange for his guilty plea,

13) Defendant confirmed he was pleading guilty to count two of his own free will because he is, in fact, guilty.

14) Defendant confirmed he understood that if he is not a United States citizen, that his plea of guilty may affect his residence and status with immigration authorities.

15) The government provided the court a factual basis supportive of the plea, and each of the elements of the charge.

(Tr. at 11-30); see Fed. R. Crim. P. 11(b)(1)-(3). Because of all these features, under the circumstances of this case, the plea was knowing and voluntary. Nicholson, 676 F.3d at 384.

Defendant argues in his motion that a technical problem with the interpreter's transmitter interfered with his ability to understand the arraignment proceedings. However, the record reflects that the interpreter was able to proceed without the transmitter, addressing the issue as follows:

> THE INTERPRETER: May the interpreter have one moment? I'm sorry, your Honor. The battery just went dead.
> THE COURT: Okay.
> THE INTERPRETER: I'll be just one second.
> (Pause)
> THE INTERPRETER: Oh.
> THE COURT: Take your time.
> THE INTERPRETER: It's actually my transmitter. I'm sorry. I'm going to have to do it old school. We're fine.
> THE COURT: What, what does that mean?
> THE INTERPRETER: I have to do it just like we're, I'm talking to him right now. It's fine.
> THE COURT: Okay.
> THE INTERPRETER: All right. Thank you.

6

(Tr. 14-15). Thereafter, the court continued questioning defendant and defendant communicated to the court without expressing any difficulty understanding. (Tr. 15). Therefore, this part of defendant's argument is insufficient to overcome the knowing and voluntary nature of this plea.

Defendant also contends that, at the time of his arraignment, he mistakenly believed that the word "knowingly" in count two applied to "possessed a firearm" only and did not apply to knowing that the serial number had been obliterated. This assertion is insufficient to show lack of a voluntary and knowing plea, for several reasons.

First, defendant confirmed at arraignment that he had discussed his charges with his attorney and he was satisfied with advice of counsel.[3] Second, the elements of the charge to which defendant pleaded guilty were set out properly in the plea agreement that defendant executed and that the court accepted at arraignment. (DE 43 at 4). That plea agreement correctly states that one of the elements is that defendant "knew that the serial number had been removed, altered, or obliterated," while knowledge of the interstate commerce element is not required.[4] (Id.); see United States v. Wilson, 81 F.3d 1300, 1307 (4th Cir. 1996) (noting that "the plea may be made on the basis of detailed information received on occasions before the plea hearing" and the trial court is not required to "recite the elements of the offense in every circumstance" at arraignment).

Third, the court reviewed the factual basis for plea with defendant at arraignment, and defendant did not raise any issue with his knowledge of obliterated serial number. While defendant

---

[3]    Notably, defendant does not argue in his motion that counsel failed to advise defendant about the element of knowledge of obliterated serial number. Rather, defendant asserts only that "all communication between the Defendant and counsel was with the assistance of a Spanish-English interpreter which can easily result in misunderstanding whether 'knowingly' modifies only 'possession of a firearm' or both 'possession of a firearm' and knowing that the serial number had been removed, altered, or obliterated." (Def's Motion (DE 61) at 12).

[4]    Although the Fourth Circuit has not addressed this element in a published opinion, other circuits uniformly have required that the government prove a defendant's knowledge of the obliterated serial number. See, e.g., United States v. Haile, 685 F.3d 1211, 1220 (11th Cir. 2012) (collecting cases); United States v. Barnes, 670 F. App'x 121, 122 (4th Cir. 2016) (same) (unpublished). By contrast knowledge of the interstate commerce nexus is not required. See, e.g., United States v. Darby, 37 F.3d 1059, 1067 (4th Cir. 1994).

7

denied knowledge that the firearm traveled in interstate commerce, he did not deny knowledge of the obliterated serial number, in discussing these facts at arraignment. In particular, defendant had the following exchange with the court:

> THE COURT: All right. Now Mr. Serrano, did you, as charged in Count 2 of the indictment, on or about January 17 of 2021, in the Eastern District of North Carolina, knowingly possess a firearm that had been shipped and transported in interstate commerce from which the manufacturer's serial number had been removed, altered, and obliterated, in violation of Title 18 of the United States Code, Sections 922(k) and 924?
> Did you do all that?
> DEFENDANT LOVO-SERRANO: I mean, did I know? No, I didn't know, but did I possess it? Yes.
> THE COURT: So you're saying that you did not knowingly possess the firearm? What are you, what are you telling me, Mr. Serrano?
> DEFENDANT LOVO-SERRANO: Well, I just didn't know that it had been transported from another state to here.
> THE COURT: Okay. So you -- you did -- you just didn't know that the --
> DEFENDANT LOVO-SERRANO: But I did posses it.
> THE COURT: Mr. McCoppin, can you offer some clarification? It sounds like he is just disputing -- he just
> well, not he just --
> MR. McCOPPIN: He doesn't --
> THE COURT: He's unaware that the gun traveled in interstate commerce?
> MR. McCOPPIN: Yes, and based on the discovery, it did.
> THE COURT: Right.

(Tr. 22-23) (emphasis added). The court then invited the government to proffer its "factual basis" for the charged offense. (Tr. 23). After that recitation, defendant's counsel noted that defendant "does dispute some of the. . . statements," and the court reviewed a number of points about the factual basis that defendant disputed, concluding as follows:

> THE COURT: . . . . Do you dispute what the Government has told me regarding your possession of a firearm?
> DEFENDANT LOVO-SERRANO: I possessed it.
> THE COURT: Okay.
> Now next, next element. The Government has told me that the evidence at the trial about the gun would be that it was shipped and transported in interstate commerce. Apparently, it was made outside of the State of North Carolina.
> Do you -- do you dispute -- do you dispute what the Government's told me about that?

8

> DEFENDANT LOVO-SERRANO: I have no idea where the weapon came from.
> THE COURT: Okay.
> <u>Next, they have also told me that at a trial in this case they would be able to prove that the gun, this Mossberg shotgun, its serial number was altered or obliterated. Apparently, it was scratched out.</u>
> <u>Do you, do you dispute what the Government's told me about what they will be able to prove at trial regarding that?</u>
> <u>DEFENDANT LOVO-SERRANO: No.</u>

(Tr. 29-30) (emphasis added). In sum, while defendant did insist that he had no knowledge of "where the weapon came from," (Tr. 29), and he raised a number of other factual objections to the government's proffer, he did not raise any issue with whether the serial number was altered or obliterated. (Tr. 30).[5] Thus, defendant's suggestion that his plea was not knowing or voluntary because he lacked knowledge that the serial number was altered or obliterated is unavailing.

Accordingly, because the record reflects that defendant's plea was both counseled and voluntary, Nicholson, 676 F.3d at 384, this factor weighs heavily against withdrawal of the guilty plea.

      b.      Legal Innocence

The next factor for consideration is whether defendant has "credibly asserted his legal innocence." Nicholson, 676 F.3d at 384. Here, defendant asserts in his motion that "he contends that he did not know the firearm's serial number had been removed, obliterated, or altered." (DE 61 at 12).

Defendant's assertion regarding his lack of knowledge of the obliterated serial number is not credible for several reasons. First, he did not raise this lack of knowledge at arraignment, even though he expressly denied lack of knowledge of the interstate commerce element multiple times.

---

[5] Defendant reiterated his ability to understand and comprehensively scrutinize facts asserted by the government and the probation office by raising several pro se objections to factual statements in the PSR at sentencing hearing. This provides further support for an inference that defendant had ability to, but did not have reason to, raise any issue with the obliterated serial number element of his charge at arraignment.

9

Second, defendant does not point to any evidence regarding the nature of the obliteration of the serial number as a basis for his lack of knowledge on this point. Third, the magistrate judge noted at arraignment, regarding the serial number, "Apparently, it was scratched out," (Tr. 30), and defendant did not challenge this characterization of the facts, even though he challenged the characterization of many other facts covered in the government's factual proffer. (Tr. 26-29).

Accordingly, on the present record, defendant has not demonstrated that the legal innocence factor weighs in favor of withdrawal of the guilty plea.

   c.  Delay

The instant motion was not filed until four months after arraignment, after the PSR in this case had been filed. While this is a significant delay, defendant himself first raised the issue of withdrawal of his guilty plea in a pro se letter filed September 8, 2022, a little more than one month after arraignment. Accordingly, all things considered, this factor is neutral.

   d.  Close Assistance of Competent Counsel

With respect to the assistance of counsel factor, the court starts this inquiry by "noting that [defendant's] indication under oath in the Rule 11 proceeding that he was entirely satisfied with the services of his attorney, and the district court's ensuing finding that his plea was knowing and voluntary" must "constitute a formidable barrier to" withdrawal of the plea on this basis. United States v. Craig, 985 F.2d 175, 179 (4th Cir. 1993). In short, where defendant represented to the court that he was satisfied with the advice of his counsel (see Tr. at 13-14), this trumps his post-hoc assertion now that counsel did not prepare him sufficiently for the plea.

Furthermore, defendant has not demonstrated ineffective assistance of counsel under the circumstances of the plea. A "defendant seeking to establish that he is entitled to withdraw his plea because he did not receive close assistance of counsel must demonstrate that counsel

10

performed deficiently and that, but for counsel's errors, the defendant would not have pled guilty and would instead have insisted on proceeding to trial." United States v. Faris, 388 F.3d 452, 459 (4th Cir. 2004). Apart from defendant's own representations at Rule 11 colloquy, the record shows that counsel provided reasonable assistance at the time of the plea in light of the favorable terms of the plea agreement. Without it, defendant would have faced a maximum sentence of ten years, double of what he now faces, and conviction of the first count in the indictment would have subjected him to automatic deportation. As such counsel reasonably advised defendant to plead guilty under the circumstances, and defendant has not demonstrated a reasonable probability that he would have insisted on proceeding to trial but for errors of counsel.

Defendant's primary basis for asserting ineffective assistance of counsel is that counsel should have "recognized that [New York State Rifle & Pistol Association, Inc v. Bruen, 124 S.Ct. 2111 (2022)] overruled preexisting caselaw regarding the crime of Possession of a Firearm with an Altered, Obliterated, or Removed Serial Number 18 U.S.C. §922(k)." (Def's Mot. (DE 61) at 8-9). The premise of defendant's argument, however, is flawed. Defendant does not identify what "preexisting caselaw" regarding the instant offense was overruled by Bruen.

Although defendant relies upon an unpublished opinion by the Southern District of West Virginia holding § 922(k) is unconstitutional based on Bruen, the government cites four other district court cases that have held that Bruen has no such effect. (DE 62 at 6). Where Bruen does not address the instant offense of conviction, it is not plausible to infer that counsel provided constitutionally deficient performance by failing to advise defendant about "potential consequences of Bruen," as defendant asserts. (Def's Mot. (DE 61) at 9). Moreover, defendant has not demonstrated that it is reasonably probable that he would have insisted on going to trial based on "potential consequences of Bruen."

Defendant does not argue in his motion that counsel was ineffective for any reason other than Bruen. For example, as noted previously, defendant does not argue that counsel was ineffective in failing to advise defendant about the element of knowledge of obliterated serial number. Accordingly, based upon the record of the Rule 11 proceedings, as well as counsel's performance at all stages of this case observed by the court, defendant has not demonstrated a lack of close assistance of competent counsel. Accordingly, this factor does not favor withdrawal of defendant's guilty plea on the grounds asserted.

   e. Prejudice

The government asserts that withdrawal of the guilty plea would "prejudice the Government and waste judicial time and resources." (DE 62 at 10). There is some support to this assertion, where defendant filed the instant motion after the probation office filed its final PSR and the court was prepared to proceed with sentencing. In addition, proceeding with trial on the first count of the indictment would require the government to present further evidence regarding defendant's immigration status that it did not need to present as a factual basis for defendant's plea on count two. On the whole, however, these two factors largely are neutral.

In sum, considered together under the totality of the circumstances, the pertinent factors favor denial of defendant's motion to withdraw guilty plea, on the basis alleged. Accordingly, the court denied defendant's motion.

B. Objections to the PSR

Defendant raised two related legal guidelines objections.[6] First, he objected to base offense level 14, and argued that the court should assign a base offense level 12 under U.S.S.G. § 2K2.1(a)(7), because he is not a "prohibited person" under § 2K2.1(a)(6). Second, defendant

---

[6] Similarly related is defendant's factual objection to the PSR's characterization of him as an "illegal alien." (PSR ¶ 8).

argued that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B), for obliterated serial number, should not apply because that enhancement does not apply when the base level is determined by subsection (a)(7). Because these objections both turn on defendant's status as a "prohibited person," the court analyzes them together.

A base offense level 14 applies, under § 2K2.1(a)(6), if defendant "was a prohibited person at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(6). A 4-level enhancement applies if any firearm "had an altered or obliterated serial number." U.S.S.G. § 2K2.1(b)(4)(B). However, comment 8 to the guideline states that if "the base offense level is determined under subsection (a)(7), do not apply the enhancement in subsection (b)(4)(B)." U.S.S.G. § 2K2.1 comment. (n. 8(A)). Thus, both the base offense level and the enhancement turn on defendant's status as a "prohibited person" under subsection (a)(6).

For purposes of subsection (a)(6), "'prohibited person' means any person described in 18 U.S.C. § 922(g) or § 922(n)." U.S.S.G. § 2K2.1 comment. (n.3). In turn, § 922(g) lists types of prohibited persons, including as pertinent here, "any person . . . who, being an alien – (A) is illegally or unlawfully in the United States." 18 U.S.C. § 922(g)(5).

The legal issue presented by defendant's objections is whether defendant was "illegally or unlawfully in the United States" at the time of the instant offense, even though he had approved applications for employment authorization (Form I-765) and alien relative (Form I-130), with an authorization to work in the United States through June 13, 2021. (PSR p. 11). Further, the additional issue presented by defendant's sentencing memorandum and argument at sentencing is whether defendant's asserted status as "parolee," based upon setting of an immigration court "bond" on July 14, 2012, means that he was not "illegally or unlawfully in the United States." (Def's Mem. (DE 64-1) at 1-2).

13

With respect to defendant's work authorization, the United States Court of Appeals for the Fourth Circuit has stated that "the mere filing of an application for adjustment of status and receipt of an employment authorization card does not legalize the alien's presence in the United States, and it is still a crime, under § 922(g)(5), for that individual to possess a firearm." United States v. Al Sabahi, 719 F.3d 305, 310 (4th Cir. 2013) (quoting United States v. Cavillo-Rojas, 510 F. App'x 238, 249 (4th Cir. 2013) (emphasis added) (citing Fifth, Eighth, Ninth, and Tenth circuit published opinions)). Concerning his "alien relative" application, the same reasoning applies, as other circuits have held. See, e.g., United States v. Atandi, 376 F.3d 1186, 1190 (10th Cir. 2004) ("Approval of a Form I–130 Petition for Alien Relative does not Authorize an Alien to Remain in the United States").

As for defendant's assertion that he had a "parolee" status that rendered him no longer "illegally or unlawfully" in the United States, this assertion is belied by defendant's own conduct in continuing to submit work authorization and alien relative applications. If defendant was legally and lawfully a resident in the United States, then he would not need to make such applications as steps to obtaining such status. See Polfliet v. Cuccinelli, 955 F.3d 377, 379 (4th Cir. 2020) ("Approval of such a [alien relative] petition is important because it allows the relative to apply for lawful permanent resident status.") (citing 8 U.S.C. § 1255) (emphasis added); see also United States v. Granados-Alvarado, 350 F. Supp. 3d 355, 362 (D. Md. 2018) (concluding that defendant's "parolee status" for some immigration purposes "does not make his presence lawful and does not spare him from prosecution under 18 U.S.C. § 922(g)(5)").

In sum, by defendant's own admission, he legally and unlawfully entered the United States without inspection in 2012. (Def's Mem. (DE 64-1) at 1). Neither his alleged parole status nor his approved petitions for work authorization and for alien relative alter his status as illegally and

14

unlawfully in the United States for purposes of §922(g)(5). Accordingly, defendant properly is characterized as a "prohibited person" under U.S.S.G. § 2K2.1(a)(6). In addition, and in the alternative, even if the court is incorrect regarding it's characterization of defendant as a "prohibited person" under U.S.S.G. § 2K2.1(a)(6), the court holds that it would impose the same sentence of 21 months imprisonment based upon application of the § 3553 factors, for the reasons stated at sentencing hearing.

## CONCLUSION

For the foregoing reasons, the court denied defendant's motion to withdraw guilty plea (DE 61) and overruled defendant's objections premised upon defendant's status as a prohibited person.

DATED, this the 9th day of February, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge

15

Case 5:21-cr-00398-FL   Document 69   Filed 02/09/23   Page 15 of 15